# CHARLESTON.

## THE STATE v. TOM CRUMBEY.

Submitted October 30, 1917.   Decided November 6, 1917.

1. LARCENY—*Subjects of Grand Larceny—Railroad Tickets—Statute —"Writings on Papers, or Books on Which Money is Due or by Which Money is Secured."*

   Railroad, transfer and ferry tickets, not specifying any sums of money payable in transportation, are not writings, papers or books on which money is due or by which money is secured, within the meaning of secs. 15 and 16, ch. 145 of the Code, and, unless the intrinsic value of the paper therein is $20.00 or more, or the value of the transportation they call for is shown to be $20.00 or more, there can be no conviction of grand larceny, on allegation and proof of theft thereof.   (p. 289).

2. SAME—*Railroad Tickets—Value.*

   If such papers, when stolen, are not available as means of obtaining transportation, for lack of a stamp, date, counter-signature, punch-hole or otherwise, they have no transportation value and the degree or grade of the larceny thereof is determinable by their value as mere paper, unless they have a value as receipts or vouchers.   (p. 289).

3. SAME.

   In the absence of proof that railroad transportation tickets and coupons taken up by a railway conductor, in payment of fares for transportation, and afterwards stolen, have a money value as receipts or vouchers in the hands of the conductor, or his employer after surrender thereof by him, in settlements of accounts, their value, in the determination of the character of the offense perpetrated in the theft thereof, is the mere value of the paper on which they are printed or written.   (p. 290).

4. SAME—*Railroad Tickets—Value—Evidence.*

   General statements or conclusions of witnesses as to the value of such papers, without specification of the use made of them or the character or ground of their value, are not sufficient to sustain a conviction on the theory of the existence of the value so stated.   (p. 290).

5. SAME.

   On the trial of a person charged with the larceny of incomplete and ineffective railroad, transfer and ferry tickets, it is improper to permit the state to prove methods of alterations thereof by

which he or other persons could have rendered them illegitimately and wrongfully available for payment of, or exchange for, transportation.   (p. 291).

Error to Circuit Court, Wayne County.

Tom Crumbey was convicted of grand larceny, his motion for new trial was overruled, and he brings error.

*Reversed and remanded for new trial.*

*William Lovins* and *Philip P. Gibson,* for plaintiff in error.

*E. T. England,* Attorney General, and *Charles Ritchie,* Assistant Attorney General, for the State.

POFFENBARGER, JUDGE:

The plaintiff in error, by a motion made in due time, attacked the verdict against him, in a trial on an indictment for the larceny of a railroad conductor's train box valued at $1.90, seventy-seven transfer tickets valued at $37.50, two hundred ferry tickets valued at $10.00 and fifty railway passenger tickets valued at $75.00, the goods and chattels of the Chesapeake and Ohio Railway Co., for lack of proof of such value in the articles taken as suffices to make the offense committed, if any, grand larceny, and for error in the admission of proof that the tickets alleged to have been taken, though practically worthless to the accused in the condition in which they were at the time of the taking, could have been easily and readily made useful to him or other persons, as means of procuring transportation, by slight alterations therein. The court having overruled his motion and sentenced him to imprisonment for a period of five years, he seeks reversal of the judgment and a new trial.

All of the passenger tickets in question had been taken up from passengers on the train, by the conductor and canceled by the punching of holes therein.   The transfer tickets and ferry tickets, had not been used and no stamp nor countersignature had to be put on them to make them available for use, but there were printed dates on them, one of which in each case, had to be punched out by the conductor issuing them, to make them so.   Although the passenger tickets had

been punched, the conductor was permitted to testify that any person having one of them, might render it available for use, by writing a notation on it to the effect that it had been .punched by mistake, as conductors sometimes do, thereby making them receivable for transportation, by the issuing carrier; and that the other tickets could have been wrongfully made effective by punching out dates printed thereon.

The offense charged is a statutory one. At common law, the larceny of notes, checks or other papers calling for the payment of money was not deemed to be larceny of the money called for by the paper, but only larceny of the paper itself. 2 Bish., Crim. L., sec. 769; 1 Hawk. P. C., ch. 33, sec. 22. Under the statute, sec. 15, ch. 145, Code, a bank note, check or other writing or paper of value is the subject of larceny, not merely as regards the intrinsic value of the paper, but as regards its value as a chose in action, its commercial value. And the money due on or secured by a stolen writing, paper or book, remaining unsatisfied, or the value of the property or money affected thereby, is deemed to be the value of the article stolen. Code, ch. 145, sec. 16. The tickets alleged to have been stolen belonged to one of two classes of papers contemplated by the statute, those constituting evidences of indebtedness and specifying the amounts thereof, or of rights to have and receive specified sums, and those having values not specified on the faces thereof. None of the papers here involved called for the payment of money, or evidenced any right to receive it. .Some of them were good for transportation, only when properly authenticated. The passenger tickets may have had value as vouchers in the settlements of accounts, but, if so, no evidence was adduced to prove the fact. The conductor testified that, among the papers taken up by him for transportation, there were six or seven coupons taken from interchangeable mileage books, worth three or four dollars each. These coupons may have been useful and valuable in settlements between the carrier and the association by which the books were issued, or other carriers, but there is no evidence that they were, nor is there any certain or definite evidence as to the number of the coupons or their value. Obviously, the conductor testified only to his general recollection as to the number and values thereof.

Theft of an incomplete and ineffective paper which, if complete and effective, would call for the payment of money, is larceny of the paper only, not of the amount of money it would call for, if complete. Such was held to be the law applicable to an unstamped check. *Regina* v. *Perry*, 1 Cox's Crim. Cas. 222. Theft of country bank notes paid in London, but susceptible of reissue, falls within the same principle. *Rex* v. *Clark*, R. & E. C. C. 181. Larceny of unstamped, undated, and unsigned railroad tickets is of the same character, *McCarty* v. *State*, 25 Pac. Rep. 199, and so is that of railway passes intended for the use of employees, prepared and left in blank, except as to the printed *fac simile* of the general manager, but not counter-signed by the officer, whose signature is necessary to make them available. *State* v. *Muscang*, 53 N. W. 874. Under a statute very much broader than ours and making "any instrument or writing whereby any demand, right or obligation is created, increased, extinguished or diminished," a subject of larceny, local and coupon railway tickets were held to be such subjects, in *State* v. *Wilson*, 95 Ia. 341, on proof that they were receipts to the conductor and worth to him the amount of the fares between the stations covered by them, notwithstanding they had been taken up by a conductor.

If the local tickets and coupons taken up by the conductor were, under the rules and regulations of the railway company, receipts for him in his settlements with his employer, for the value of the transportation represented by them, and such value was $20.00 or more, theft thereof was grand larceny. The value of the paper, contemplated by the statute, is not its value to the thief. That is not the criterion. Its value to the owner or person from whom it is taken is one test, if not the true and only one. In the cases to which reference has been made and others the principal inquiry was whether the stolen papers had been so far perfected at the time of the thefts thereof, as to make them impose obligations upon the owners in favor of other persons, or upon other persons in favor of the owners. But the lifted railroad tickets and coupons do not, on their faces, purport to create any obligations upon the railway company or its con-

ductor, nor disclose any specification of value or use to any person. *Prima facie,* the obligations they imposed had been satisfied. Whether they had any value not disclosed on their faces, depends altogether upon extraneous evidence, and none was adduced except the general statements of witnesses, that they were worth a certain sum of money. Why or how they were worth anything beyond the intrinsic value of the paper, was not indicated. Such testimony is too vague and uncertain to sustain a conviction of a heinous crime, carrying a long term of imprisonment by way of penalty. These statements were mere opinions or conclusions based upon no data or evidence by which their correctness could be tested.

Authorities already cited establish the impropriety of the admission of proof of methods of wrongful and unauthorized alterations of the tickets, so as to make them illegitimately useful or available. Such acts would amount to forgeries, and if proof of capacity to turn a valueless paper into a valuable one by forgery, can be admitted to make out an offense, in connection with the theft of a piece of paper, the larceny of a blank check, note or any other scrap of paper could be enlarged into a felony.

For the errors in the admission of improper evidence and insufficiency of the evidence, to prove the accused guilty of grand larceny, the judgment will be reversed, the verdict set aside and the case remanded.

*Reversed and remanded for new trial.*