718 So.2d 521 (1998)
STATE of Louisiana
v.
Oscar BALLARD.
No. 97 KA 0233.
Court of Appeal of Louisiana, First Circuit.
July 14, 1998.
*523 John Watts, Livingston, for Plaintiff/Appellee State.
Edward R. Greenlee, Baton Rouge, for Defendant/Appellant Oscar Ballard.
Before LOTTINGER, C.J., and SHORTESS, CARTER, LeBLANC, FOIL, GONZALES, WHIPPLE, FOGG, PARRO, FITZSIMMONS, KUHN, GUIDRY and WEIMER, JJ.
KUHN, Judge.
Defendant, Oscar Ballard, Jr., was charged by bill of information with third offense driving while intoxicated (DWI), a violation of La. R.S. 14:98. After trial by jury, defendant was found guilty as charged. The trial court sentenced defendant to imprisonment at hard labor for a term of two years. Defendant has appealed, briefing four assignments of error.
Defendant's arrest for the instant DWI offense arose out of a traffic stop of the vehicle he was driving, when Louisiana State Police Officer Mark Cardon stopped it for a speeding violation. Kenny Ray Shaffett was riding in defendant's vehicle at the time of the stop.

ASSIGNMENT OF ERROR NO. 1:
In this assignment, defendant contends the trial court erred by denying his cause challenges of prospective jurors Michael Brian Summers, Warren Stewart, Sybil Miller, and David Shultz, Jr. Defendant argues that Summers, Stewart, and Miller should have been excused because of their relationships to law enforcement officers and that Shultz should have been excused because of his status as an actively employed police officer.
The record reflects that defendant exhausted his peremptory challenges.[1] Thus, if he establishes an erroneous denial of a defense challenge for cause, prejudice is presumed, and there is reversible trial court error. See State v. Ross, 623 So.2d 643, 644 (La.1993).

RELATIONSHIPS TO LAW ENFORCEMENT OFFICERS
La.C.Cr.P. art. 797(2) provides that the state or the defendant may challenge a juror for cause on the ground the juror is not impartial, whatever the cause of his partiality. However, in State v. Lewis, 391 So.2d 1156, 1158 (La.1980), the Louisiana Supreme Court stated that:
[S]ervice on a criminal jury by one associated with law enforcement duties must be closely scrutinized and may justify a challenge for cause, although such association does not automatically disqualify a prospective juror. (citations omitted).
It is well-settled that relationship to a law enforcement officer is not, of itself, grounds for a challenge for cause. Rather, the question presented is whether or not the prospective juror could assess the credibility of each witness independently of his or her relationship with members of law enforcement. State v. Collins, 546 So.2d 1246, 1253 (La. App. 1st Cir.1989), writ denied, 558 So.2d 599 (La.1990). A trial court has broad discretion in ruling on challenges for cause. State v. Welcome, 458 So.2d 1235, 1241 (La.1983), cert. denied, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152 (1985). A refusal by a trial court to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Copeland, 530 So.2d 526, 534 (La.1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989).
During voir dire by the trial court and the prosecutor, Michael Brian Summers testified he formerly worked as an East Baton Rouge Parish Deputy Sheriff for three years and was currently employed by a company as a tactical response officer and photographer in a corporate security capacity. In response to questioning by the court, Summers indicated his previous employment as a deputy sheriff and the fact he knew persons currently employed in law enforcement would have no bearing on his ability to serve as a fair and *524 impartial juror. He would hold any law enforcement officers who were called as witnesses in this case to the same standard as he would anyone else and would make them convince him they were in fact telling the truth and would not be more apt to believe someone simply because the person was employed by a law enforcement agency. Thereafter, during defense counsel's questioning, Summers gave the following testimony:
Q. And you have numerous friends that are involved in law enforcement; is that correct?
A. Yes.
Q. You talk to them on a regular basis about their job and different cases and what they do?
A. Not cases, but talk to them on a regular basis.
Q. Is there ever any discussion about D.W.I. cases that they have worked or facts on cases maybe without knowing the names, things that happen on the job?
A. Commonly.
Q. It is a common occurrence, isn't it?
A. Yes, sir.
Warren Stewart testified his uncle and a first cousin were currently employed as dispatchers with the Livingston Parish Sheriff's Office. However, his responses to questioning by the court revealed that his relationship to those two individuals would have no effect whatsoever on his ability to serve as a fair and impartial juror in this case and that he could be a fair and impartial juror, notwithstanding those relationships. Later, during defense voir dire, Stewart answered in the negative when asked if he would be more prone to believe a police officer than an ordinary citizen.
Sybil Miller testified her husband worked as a reserve deputy sheriff under Sheriff Odom Graves. Her first cousin was a detective with the Baton Rouge City Police and currently served as Chief of Police in Walker, Louisiana. A neighbor of Miller formerly was a ward marshal in Denham Springs, Louisiana; and the neighbor's son currently held the same position. Another son of the same neighbor currently held the position of captain with the Louisiana State Police. Additionally, many of Miller's friends were currently employed by the Louisiana State Police. However, during the court's voir dire of Miller, she testified that her relationships with law enforcement personnel would have no bearing on her ability to be a fair and impartial juror. She would not be more apt to believe or disbelieve a police officer simply because she has known police officers, and she would hold police officers to the same standard as she would any other witnesses and make them convince her they were telling her the truth before accepting their testimony as truthful. During subsequent voir dire questioning by defense counsel, Miller revealed she also had an uncle who had retired from service as a Baton Rouge city police officer. When defense counsel asked Miller if she had "often heard them [law enforcement officers with whom she had a relationship] talk about their experience[s] as police officers," she answered: "Oh, no, sir."
Based upon our review of the testimony given by Summers, Stewart, and Miller, as summarized above, we cannot disagree with the trial court's conclusions that these prospective jurors would be fair and impartial jurors. Accordingly, we find no abuse of the trial court's discretion.

EMPLOYMENT AS A LAW ENFORCEMENT OFFICER
Relying on this court's holding in State v. Robinson, 96-0292 (La.App. 1st Cir. 11/8/96); 684 So.2d 63, defendant urges the trial court's denial of his challenge for cause of potential juror Schultz is erroneous. We convened this en banc panel to consider the propriety of our holding in Robinson and we now conclude it is erroneous.
In Robinson, this court examined the denial of a challenge for cause of a potential juror. The sparse facts set forth in the Robinson opinion establish that prospective juror Thomas J. Brown was a retired state trooper actively engaged as a Lafourche Parish sheriff's deputy at the time of defendant's trial in Terrebonne Parish. During voir dire examination, Brown stated "unequivocally... that he could be fair and impartial and that his experience in law enforcement would not cause him to give more weight to the testimony of witnesses who were law enforcement *525 officers." Robinson, 684 So.2d at 64. This court relied on State v. Simmons, 390 So.2d 1317, 1318 (La.1980), to reverse the trial judge's denial of defendant's challenge of Brown for cause, reasoning that because Brown was an actively employed deputy sheriff, the failure of the trial court to dismiss him for cause was error.
In Simmons, 390 So.2d at 1318 (the sole basis for our holding in Robinson), our Supreme Court examined whether prospective juror Sherrie Carter could be fair and impartial. Simmons was on trial in Caddo Parish for attempted simple burglary. Carter, an investigator with the Caddo Parish Sheriff's Department, testified during voir dire that she was acquainted with the majority of employees in the Caddo Parish District Attorney's office, having dealt with them in her work as a deputy sheriff. Carter had a master's degree in law enforcement and had been working for the Caddo Parish Sheriff's office for one year. Carter had arrested approximately 25 people during her year of work and had been a witness in judicial proceedings. Carter indicated that she had not seen any instances where the Sheriff's Department had arrested the wrong person for a crime. She was personally acquainted with four of the officers scheduled to testify in the District Attorney's presentation of his case. Although Carter stated that she would not have any problems in applying the judge's instructions to the facts, the Louisiana Supreme Court found that "one with a graduate degree in law enforcement, employed by the Sheriff's office, and working with the District Attorney's office, must be affected by that employment relationship." (Emphasis added.)
The Simmons court stated that it was "reasonable to conclude that [Carter's employment relationship with the Caddo Parish Sheriff's office] would have influenced her verdict." Noting that the guarantee of an impartial trial under Article I, Section 16, of the Louisiana Constitution was "offended by the presence on a jury of a badge-wearing law enforcement officer," the Simmons court held that "an actively employed criminal deputy sheriff is not a competent criminal juror." Simmons, 390 So.2d at 1318. In so holding, our Supreme Court looked outside the purview of this jurisdiction and cited Gaff v. State, 155 Ind. 277, 58 N.E. 74 (1900); Robinson v. Territory of Oklahoma, 148 F. 830 (U.S. 8 Cir.1906); Tate v. People, 125 Colo. 527, 247 P.2d 665 (1952); and State v. West, 157 W.Va. 209, 200 S.E.2d 859 (1973) as authority for its determination.
An examination of the out-of-jurisdiction cases cited by the Simmons court reveals that, in all instances, each potential juror under scrutiny worked for the prosecuting or complaining witness of the district attorney trying the case, i.e., the law enforcement agency investigating and raising the charges for which defendant was being tried. In Tate v. People, 125 Colo. at 539, 247 P.2d at 671, an en banc panel of the Supreme Court of Colorado noted:
the juror, as a deputy sheriff, would be presumed to be under ordinary allegiance to his superior, the sheriff, who was the prosecuting witness in the case and his remuneration as a deputy sheriff was wholly dependent upon such services as he might perform at the request of his superior.
As succinctly noted in West, "Common law has generally been circumspect in permitting any juror to sit who is related to either party through kinship or interest." The West court stated:
In the case of Crawford v. United States, 212 U.S. 183, 29 S.Ct. 260, 53 L.Ed. 465 (1909) a juror was called in the District Court who was both a druggist and a clerk of the United States Government Post Office in the sub-postal station located in his drugstore. The defendant challenged the juror for cause, asserting the objection that he was a salaried officer of the government. A federal statute in the District of Columbia rendered incompetent as a juror "all executive and judicial officers, salaried officers of the government of the United States and of the District of Columbia." The Supreme Court held that the disqualification within the statute did not alter or restrict the common law rules which excluded a juror in a case if the juror were a master, servant, steward, counselor or attorney of either party. The *526 Court said, "In such a case a juror may be challenged for principal cause as an absolute disqualification of the juror."
West, 157 W.Va. at 217, 200 S.E.2d at 865.
Thus, the basis of the challenge for cause of the potential juror in West, as in all these out-of-jurisdiction cases relied upon by the Simmons court, was "because [the potential juror] is the servant [employee] of one of the parties." West, 157 W.Va. at 217, 200 S.E.2d at 865.
Although Simmons broadly states "an actively employed criminal deputy sheriff is not a competent criminal juror" and that "[a]ny jurisprudence to the contrary is expressly overruled," it is evident from the authority relied upon that the holding presumes the actively employed criminal deputy sheriff who is a potential juror be from and work within the same jurisdiction as the complaining witness for the prosecution. In other words, it was the master-servant (i.e., the employer-employee) relationship between the potential juror and the prosecution's complaining witness (the sheriff of Caddo Parish, the same parish in which defendant was being tried) that established the presence of bias. See West, 157 W.Va. at 217-18, 200 S.E.2d at 865.[2]
Regarding the scope of the inquiry the defendant and prosecutor should be mindful of during voir dire examination when the potential juror is an actively employed law enforcement officer, the West court instructs:
when the defendant can demonstrate even a tenuous relationship between a prospective juror and any prosecutorial or enforcement arm of State government, defendant's challenge for cause should be sustained.
In our earlier case of State v. Robinson, 684 So.2d 63, potential juror Brown was an actively employed deputy sheriff in Lafourche Parish; however, the defendant was being tried in Terrebonne Parish. As such, Brown did not have the connection to the district attorney's prosecuting or complaining witness (i.e., the Terrebonne Parish Sheriff's Department) that potential juror, Caddo Parish deputy sheriff Carter had to the prosecuting or complaining witness for the Caddo Parish District Attorney in Simmons. Clearly, the employer-employee relationship present in Simmons (and all the out-of-jurisdiction cases relied upon by the Supreme Court) was not present in Robinson. Accordingly, we find our reliance on the overly broad language of the holding in Simmons to be misplaced. For these reasons, we overrule State v. Robinson, 684 So.2d 63, insofar as it either expressly or implicitly holds that all actively employed criminal deputy sheriffs are automatically not competent criminal jurors. Thus, where an actively employed deputy sheriff who is a potential juror has no employer-employee relationship with the prosecution's complaining witness, we hold that a showing of bias must be made on the record before the potential juror is properly excused for cause.
*527 We turn now to the trial court's denial of defendant's challenge for cause in the instant case. The record establishes that Schultz is currently employed as a Baton Rouge City police officer in the K-9 division. He testified that he knew numerous police officers but stated unequivocally that the fact that he knows law enforcement officers would have no bearing on his ability to serve as a fair and impartial juror. Schultz indicated in his voir dire responses that he would not be any more inclined to believe or disbelieve someone simply because the person is a police officer.
Based on the record it is clear that Schultz is a law enforcement officer for the City of Baton Rouge, and that defendant was tried in Livingston Parish Sheriff's Office. Thus, no employer-employee relationship exists between Schultz and the Livingston Parish District Attorney's chief complaining witness, i.e., the Livingston Parish Sheriff. In overruling State v. Robinson, 684 So.2d 63, and having more closely examined the holding in Simmons, we conclude the fact of Schultz's employment in and of itself does not, as a matter of law, imply bias. Based on the record before us, we find no reasonable basis to infer that Schultz's employment relationship with the City of Baton Rouge Police Department would have influenced his verdict. See Simmons, 390 So.2d at 1318. Accordingly, the trial court's denial of the challenge for cause of prospective juror Schultz on the basis of his active employment as a law enforcement officer where no employeremployee relationship was established between him and the district attorney's prosecuting or complaining witness (i.e., the Livingston Parish Sheriff) is not erroneous.
We examine now whether any finding of bias sufficient to warrant Schultz's removal from jury consideration for cause is supported by this record. Defendant suggests that the following colloquy between counsel for defendant and Schultz establishes bias on the part of the potential juror:
Mr. Touchet (defendant's trial attorney):
Q. Mr. Schultz, you are currently a police officer with Baton Rouge P.D., is that correct?
A. Yes, sir.
Q. What do you do for them?
A. K-9 division.
Q. You work patrol?
A. Yes, sir.
Q. You work D.W.I.'s?
A. As many chances I get I do.
The record contains no further inquiries about the scope of Schultz's law enforcement duties.
Depending on Schultz's vocal intonation, the response "As many chances I get I do" can be understood to mean that Schultz either aggressively pursues opportunities to arrest individuals suspected of driving while intoxicated; or that he does not have many opportunities to "work D.W.I.'s." In this case, the trial court heard Schultz's answers and witnessed his facial expressions and body language during the voir dire examination. It is because of the trial court's superior position to make such judgment calls that we use an abuse of discretion standard of review. See State v. Ledet, 96-0142, p. 6 (La. App. 1st Cir. 11/8/96); 694 So.2d 336, 340, writ denied, 96-3029 (La.9/19/97); 701 So.2d 163. We find no abuse of that discretion by the trial court under the facts of this case. Having failed to establish bias on the part of potential juror Schultz, we find no error in the trial court's denial of defendant's challenge for cause of prospective juror David Schultz, Jr.
Because defendant has failed to show any abuse of discretion by the trial court in the denial of challenges for cause of prospective jurors, Michael Summers, Warren Stewart, Sybil Miller and David Schultz, Jr., this assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 4:
In these assignments, defendant contends the trial court erred by denying his motions for post verdict judgment of acquittal and a new trial, based on his claim that the state failed to establish his guilt by constitutionally sufficient evidence.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *528 any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also La.C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
The state's evidence consisted of the testimony of Officer Mark Cardon and State Exhibit S-1, documentary evidence of the two predicate DWI convictions used to enhance the instant offense to a level three DWI. Defendant presented the testimony of his wife, Janice M. Ballard, and Kenny Ray Shaffett.
Cardon's testimony reveals the following. On July 5, 1995, Cardon was traveling in his police unit on LA 16 in Livingston Parish when he clocked a vehicle approaching from the opposite direction traveling 67 mph in a 50 mph speed zone. After Cardon effected a stop of the vehicle, defendant (the driver) exited the vehicle. Defendant appeared to be unsteady on his feet and swayed as he walked to Cardon's unit. Defendant, a white male, identified himself as Oscar Ballard, Jr. When Cardon asked defendant for his driver's license, defendant replied he did not have it with him. While the two were talking, defendant continued to be unsteady on his feet and to sway. Also, Cardon observed defendant had glassy, bloodshot eyes and detected a strong odor of alcoholic beverage about defendant's person.
After Cardon advised defendant of his Miranda rights, defendant submitted to a field sobriety test administered by Cardon. The test consisted of four parts, a horizontal gaze nystagmus (HGN), walk and turn, one leg stand, and alphabet test. On the HGN test, defendant lacked smooth pursuit and had nystagmus at maximum deviation and nystagmus onset prior to 45 degrees, which "tells me [Cardon] that he is intoxicated." On the walk and turn test, defendant failed to touch heel to toe, swayed during the test, lost balance while turning and had to start the test over but again failed to touch heel to toe on several steps. On the one leg stand test, defendant did not count as instructed, swayed and could not stand still. On the alphabet test, defendant said the letters "all out of order." Regarding physical defects, defendant told Cardon his "left kneecap is gone." However, while taking the one leg stand test, defendant used his right leg to take the test. Based on all the circumstances and not just defendant's poor performance on any one of the four parts of the field sobriety test, Cardon determined defendant was intoxicated. Cardon placed defendant under arrest. Defendant admitted to Cardon he was operating a motor vehicle on his way home at the time of the stop and stated he had consumed a six pack of twelveounce beers at home earlier that day. In addition to his name, defendant supplied Cardon with his date of birth (6-25-66), and social security number (XXX-XX-XXXX). Cardon obtained defendant's driver's license number (2722212) from the State Police. Cardon transported defendant to the Denham Springs Police Department where defendant refused to take a breath test after being advised of his rights relating to chemical testing for intoxication.
The documentary evidence of the two predicate convictions, contained in S-1, reflected that each of the predicate DWI's was committed by a white male named Oscar Ballard, Jr., having a birthday and driver's license number matching defendant's. Additionally, documentation of one of the predicates included a social security number which matched that of defendant.
Janice Ballard testified she had been married to defendant for four years and knew he had two DWI convictions prior to their marriage. She stated defendant worked as a welder and suffered very serious damage to his eyes on three or four occasions. Defendant was hospitalized for such damage, and sometimes came home with bloodshot eyes from welding. According to Janice, she and defendant went to a crawfish boil at the home of a friend on July 4, arriving at about noon. Janice left the crawfish boil at about 9:00 p.m. with a friend, and defendant remained there. While at the crawfish boil, defendant consumed three or four beers; but, when she left at 9:00 p.m., it had been about four hours since defendant had consumed any beer. Janice did not know what, if anything, defendant drank between 9:00 *529 p.m. on July 4 and the time she later saw defendant at jail on the morning of July 5. Janice had seen defendant intoxicated but not very often. She recalled the effects on defendant and his actions on occasions when he was intoxicated; and, according to her, defendant was not intoxicated when she saw him on the morning of July 5.
Kenny Ray Shaffett testified the crawfish boil was held at his home and he was in defendant's vehicle at the time of the traffic stop. On July 4, defendant consumed three or four beers over a period from about noon to 4:00 p.m.; and, to his knowledge, defendant did not drink any more during the period from about 9:00 p.m. until the traffic stop.
After viewing all the evidence in the light most favorable to the prosecution, we are convinced a rational trier of fact could have concluded beyond a reasonable doubt defendant was guilty of third offense DWI.
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 3:
In this assignment, defendant contends the trial court erred by refusing to set or allow him post-conviction bond.
The issue of whether or not the trial court has improperly refused bail is neither properly nor timely raised on appeal. The correct procedure is to invoke the supervisory jurisdiction of this court through article 343 of Louisiana Code of Criminal Procedure. As is evident from this case, once a conviction has been either affirmed or reversed on appeal, the issue of post-conviction bail pending appeal is moot. See State v. Gamberella, 633 So.2d 595, 608 (La.App. 1st Cir.1993), writ denied, 94-0200 (La.6/24/94); 640 So.2d 1341. Accordingly, this assignment of error is without merit.

CONCLUSIONS
For the reasons herein expressed, the conviction and sentence of defendant, Oscar Ballard, Jr., are affirmed.

CONVICTION AND SENTENCE AFFIRMED.
WHIPPLE, J., dissents and assigns reasons.
FITZSIMMONS, J., dissents, and assigns reasons.
SHORTESS, J., dissents with reasons.
FOGG, J., dissents.
WEIMER, J., concurs and assigns reasons.
CARTER, J., dissents for reasons assigned by WHIPPLE and SHORTESS, JJ.
GUIDRY, J., dissents and assigns reasons.
WEIMER, Judge, concurring.
I concur in the result reached by the majority.
When a jury is empanelled, an individual is entitled to have the case decided by a jury of one's peers. The right to a trial by jury is a fundamental feature of our system of justice and is the bulwark of our liberty.
Excluding a segment of society from jury service must only be done in limited situations, otherwise a jury would not be comprised of one's peers. A law enforcement officer, employed by the authority bringing the charges, should be excused for cause because of the appearance of not being impartial. LSA-C.Cr.P. art. 797(2). However, a law enforcement officer, not employed by the authority bringing the charges, should not be automatically excluded from jury service simply for being a law enforcement officer, but must be carefully evaluated for bias and prejudice. If the trial court is convinced the officer will render an impartial verdict according to the law and the evidence, the officer should not be automatically excluded for cause.
To automatically deny a person participation in jury service without compelling reasons inappropriately discriminates against the excluded juror and undermines public confidence in the fairness of our system of justice.
SHORTESS, Judge, dissenting.
The majority in this case has used a fastshoe routine, or maybe it's smoke and mirrors, *530 and has done indirectly what it cannot do directly. It has overruled State v. Robinson, 96-0292 (La.App. 1st Cir. 11/8/96), 684 So.2d 63. Robinson, using two Louisiana State Supreme Court cases, State v. Simmons, 390 So.2d 1317 (La.1980), and State v. Vanderpool, 493 So.2d 574 (La.1986), held that article I, section 16 of the Louisiana Constitution prohibits badge-wearing law-enforcement officers from being on a criminal jury.
Robinson should not have been overruled. It simply followed the dictates of the Louisiana Supreme Court. As an intermediate court, we are obligated to follow supreme court precedent.
I respectfully dissent.
WHIPPLE, Judge, dissenting.
As articulated by the Supreme Court in State v. Simmons, 390 So.2d 1317, 1318 (La. 1980), "[t]he guarantee of an impartial trial in Article 1, Section 16, of the Louisiana Constitution of 1974 is offended by the presence on a jury of a badge-wearing law enforcement officer." These principles are equally applicable herein regardless of the employing law enforcement agency. For these reasons, I respectfully dissent.
FITZSIMMONS, Judge, dissenting, with reasons.
H.L. Menchen wrote that "a judge is a law student who marks his own examination papers." Thus it would be if active duty police officers were to sit within the sanctuary of the jury room.
As does Judge Kuhn, I agree with the principle that citizens have a right and a duty to serve on a jury. However, when that right is at odds with the defendant's constitutional right to a fair and impartial jury, the resolution must be in favor of a fair trial. See U.S. Const. amend. VI; La. Const. art. 1, § 16. By occupying a certain position, a citizen, for example, a judge, waives his right to serve as a juror. A judge's connection to the judicial system is too strong. The effect of a judge's opinion on the jury would, quite probably, impermissibly sway the other jurors. In the same way, I believe that the presence of an active duty police officer on a jury would, directly or impliedly, insert a note of partiality in the jury's deliberations. To avoid an impermissible influence on jury analysis or deliberations, I believe it is essential to exclude all active duty law enforcement officers from jury service in criminal matters.
GUIDRY, Judge, dissenting.
The majority, in seeking to overrule State v. Robinson, 96-0292 (La.App. 1st Cir. 11/8/96), 684 So.2d 63, fails to follow the Louisiana Supreme Court dictates as set forth particularly in State v. Simmons, 390 So.2d 1317 (La.1980), on which Robinson is based.
The majority seeks to distinguish Simmons from the instant case by relegating Simmons to instances where the deputy sheriff is employed by the parish in which the prosecution is taking place. The majority looks beyond the plain meaning of the Simmons opinion to out-of-jurisdiction cases cited by the Simmons court. The Simmons court, after reviewing these cases could have limited their decision to instances where the deputy sheriff was employed by the sheriff in the parish which was the situs of the prosecution, but they chose not to so limit their decision. Instead, they crafted an opinion in which the emphasis was on active employment as a law enforcement officer, regardless of the employing sheriff. The suspect interaction was not just with fellow employees of a particular sheriff but also on interaction with other law enforcement agents and with prosecutors who were not their direct employers. The reality of criminal prosecutions in this state is that we have multi-jurisdictional task forces, cooperation and shared resources among parishes, multi-parish judicial districts, with several sheriffs and one district attorney and particular sheriff's employees working in tandem with non-employing prosecutors and other law enforcement personnel outside their department. The majority's fine line distinction based on which sheriff's office hires you and pays your salary is a hollow argument. It is the status as a law enforcement officer and the interaction with other law enforcement officers and with *531 prosecutors intra- and inter-parish that renders seating an actively employed sheriff's deputy as a juror violative of our constitution. The guarantee of an impartial trial in Article 1, Section 16, of the Louisiana Constitution of 1974 is offended by the presence on a jury of a badge-wearing law enforcement officer. State v. Simmons, 390 So.2d at 1318.
I respectfully dissent.
NOTES
[1] The record further reveals that, following the court's denial of each of the cause challenges at issue, defendant used a peremptory challenge to excuse each of these prospective jurors.
[2] We feel compelled to note that in State v. Vanderpool, 493 So.2d 574, 575 (La. 1986), the Supreme Court discussed whether prospective juror Wilson Pitre, an actively employed sheriff's deputy, should have been dismissed from juror service for cause. Citing Simmons, the Supreme Court, inter alia, held:

In Louisiana "an actively employed criminal deputy sheriff is not a competent criminal juror." Simmons expressly overruled contrary jurisprudence and left no doubt of the rule. The trial judge plainly erred in refusing to excuse the deputy. (Citations omitted.)
Because the facts set out in the Vanderpool opinion do not establish where prospective juror, deputy sheriff Pitre was actively employed, this holding can be broadly construed to mean that all actively employed deputy sheriffs are subject to a challenge for cause in the selection process of criminal juries. However, the predecessor determination rendered by this court, State v. Vanderpool, 476 So.2d 546 (La.App. 1st Cir. 1985), writ granted, 481 So.2d 619 (La. 1986) (which was the basis of the writ of certiorari granted by the Supreme Court), establishes that Vanderpool was being tried in Lafourche Parish and that prospective juror Pitre was actively employed as a deputy sheriff in Lafourche Parish. Thus, the Supreme Court's holding in Vanderpool was clearly premised on the fact that an employer-employee relationship existed between potential juror Pitre and the Lafourche Parish District Attorney's chief complaining witness, i.e., the Sheriff of Lafourche Parish. As such, we do not believe the broadly-worded language contained in Vanderpool, 493 So.2d at 575, was intended to exclude, in every instance, all actively employed law enforcement personnel from criminal jury service in Louisiana.