STATE OF WEST VIRGINIA

*v.*

WILLIAM ARCHER

(No. 15231)

Decided March 18, 1982.

*Richard A. Bush* for appellant.

*Harry G. Deitzler*, Prosecuting Attorney, *and C. Scott Durig*, Assistant Prosecuting Attorney, for appellee.

PER CURIAM:

The appellant, William Archer, was convicted in the Circuit Court of Wood County of the crime of delivery of lysergic acid diethylamide (LSD) in violation of *W. Va. Code*, 60A-4-401(a)(1)(ii) [1971]. He was sentenced to confinement in the State Penitentiary for a period of from one to five years and subsequent to the circuit court's denial of his motion to set aside the verdict and award a new trial, prosecuted this appeal. Although appellant cites several assignments of error, we will address only one and reverse solely on that point.

The evidence in this case shows that the appellant delivered twenty tablets of LSD to an undercover policeman in a bar known as "Someplace Else" in downtown Parkersburg. The police officer paid the sum of $40.00 to the appellant in exchange for the drug. The appellant did

not deny that the transaction took place, but testified that the officer had approached him so many times that day that he ultimately decided to provide the requested LSD. The appellant also testified that the drugs in question did not belong to him, but that he had merely acted as a go-between for one Earl White.

On the basis of this testimony, the appellant asserted the defense of entrapment at his trial and the jury was instructed accordingly. At the conclusion of the trial, the appellant was found guilty.

The sole issue which we address in this opinion is whether the trial court erred in refusing to strike for cause prospective juror Charles Stephens. The record demonstrates that during the impaneling of the twenty jurors from which twelve would ultimately be selected, Mr. Stephens was placed on the panel. During the *voir dire* examination of the prospective jurors, Mr. Stephens related that his son had been a Deputy Sheriff until approximately three months prior to the trial and that he was still employed in the law enforcement field although not in Wood County. In answer to a question from the prosecuting attorney as to whether any of the jurors were biased as a result of their relationships with relatives or friends in law enforcement, Mr. Stephens said: "I would hate to say that normally I would lean toward the officers."

As a result of his statement, Mr. Stephens was questioned further in chambers.

"MR. RICHARDSON: Mr. Stephens, I believe you indicated, when I asked you questions, that you would lean toward favoring the testimony of a police officer.

"PJ STEVENS: Yes.

"MR. RICHARDSON: And do you feel, since officers are testifying in this case, that that would cause you to evaluate their testimony differently than you would Mr. Archer and persons who are not police officers?

"PJ STEPHENS: Possibly so. Some officers I might know that testify just as casual acquaintances through my son, but it might affect me.

"MR. RICHARDSON: So you feel that there is a possibility that the fact that your son is a Deputy Sheriff might influence you to give more weight to a policeman's testimony solely because he is a policemen?

"PJ STEPHENS: I think so."

Mr. Stephens then stated that he did not personally know any of the police officers involved in the case, and if he had met them at all it would have been casually and he could not pick them out. The colloquy continued:

"MR. DURIG: Mr. Stephens, if the Court were to instruct you that, in evaluating the testimony of the witnesses, no matter who they are, whether they be police officers, private citizens, the Defendant, that there are certain rules that must be followed and that the jury must evaluate the testimony of each and every witness who testified before them in this trial by the same rules, would you be able to follow that instruction of the Court?

"PJ STEPHENS: I will be honest about it.

"MR. DURIG: Would you be able to follow that instruction?

"PJ STEPHENS: Yes. I am not going to lean to someone just because I know them, if they are wrong."

At the conclusion of the questioning in chambers, defense counsel moved to strike Mr. Stephens for cause. The court denied the motion, but Mr. Stephens was eliminated from the jury panel of twelve by a peremptory challenge.

In the case of *State v. Hatfield*, 48 W.Va. 461, 37 S.E. 626 (1900) this Court held, in part, in syllabus point 1:

"The object of the law is, in all cases in which juries are impaneled to try the issue, to secure men for that responsible duty whose minds are

wholly free from bias or prejudice either for or against the accused. . . ."

And in *State v. Dushman*, 79 W.Va. 747, 91 S.E. 809 (1917) we stated in syllabus point 1:

"By section 3, chapter 159, Code 1913, one accused of a felony is entitled as a matter of right to a panel of twenty jurors, unexceptionable under the rules of the common law, before being called upon to exercise his right of peremptory challenge."

In *State v. West*, 157 W.Va. 209, 200 S.E.2d 859 (1973) we found it to be reversible error in a criminal case for a trial court to overrule a challenge for cause of a juror who is an employee of a prosecutorial or enforcement agency of the State. *West* involved an appeal from a grand larceny conviction and the challenged juror was a member of the Department of Public Safety.

The respondent would distinguish *West* from the case before us because the juror there was actually an employee and not just a relative of a law enforcement officer. We do not find such a distinction to be valid. We noted in *West* that it was because of the juror's association with law enforcement officers and the resulting *potential prejudice* that a peremptory challenge should not be required to disqualify him. In addition, we stated at 866, 200 S.E.2d 859:

But when the defendant can demonstrate even a tenuous relationship between a prospective juror and any prosecutorial or enforcement arm of State government, defendant's challenge for cause should be sustained by the court. A defendant is entitled to a panel of twenty jurors who are free from exception, and if proper objection is raised at the time of impaneling the jury, it is reversible error for the court to fail to discharge a juror who is obviously objectionable. In any case where the trial court is in doubt, the doubt must be resolved in favor of the defendant's challenge, as jurors who have no relation whatsoever to the State are readily available."

We believe the record in this case shows that Mr. Stephens was at least subject to potential prejudice and that defense counsel's extra motion to strike for cause should have been granted.* Accordingly, the judgment of the Circuit Court of Wood County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*

---

* The appellant also assigns as error the giving of State's Instruction No. 1 which told the jury that before the defendant could be convicted of delivery of LSD, the State must prove beyond a reasonable doubt that: (1) the defendant, WILLIAM ARCHER; (2) in Wood County, West Virginia; (3) on or about the 31st day of October, 1979; (4) did deliver; (5) Lysergic Acid Diethylamide, a controlled substance; (6) to Austin Hairston; (7) and that at the time of said delivery the said Austin Hairston was a person over the age of eighteen (18) years. The appellant correctly argues that the element of intent is omitted from this instruction. Although we see from the record that intent was covered in State's Instruction No. 1A, the better course to prevent the jury from being misled would have been to include intent in the list of elements of the crime; here, it should have been listed in State's Instruction No. 1.