566 S.E.2d 891

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Marvin Steve MILLS, Defendant Below, Appellant**

No. 30031.

Supreme Court of Appeals of West Virginia.

Submitted April 23, 2002.

Decided June 24, 2002.

Kristen L. Keller, Esq., Chief Deputy Prosecuting Attorney, Beckley, for Appellee.

Gregory L. Ayers, Esq., Deputy Public Defender, Charleston, for Appellant.

PER CURIAM.

The defendant, Marvin Mills, appeals his conviction in the Circuit Court of Raleigh County of first degree murder with the use of a firearm. He was sentenced to life in the penitentiary without the possibility of parole. For the reasons that follow, we reverse the

defendant's conviction and remand for a new trial.

## I.

## FACTS

It is undisputed that the defendant, Marvin Mills, fatally shot Pamela Cabe. The evidence at trial revealed the following. On September 8, 1999, the defendant entered Richmond Cleaners in downtown Beckley, West Virginia, where Mrs. Cabe worked, and shot her with a .38–caliber pistol once in the back and once in the head. Mrs. Cabe was dead by the time paramedics arrived moments later.

After shooting Mrs. Cabe, the defendant walked across the street, sat on a wall, and watched emergency vehicles arrive while he smoked a cigarette. He was arrested without incident moments later after a police officer recognized him as the shooter from a description given by a witness. The defendant stated to the police that he had gone to Richmond Cleaners to talk with Mrs. Cabe concerning a dispute between Mrs. Cabe's son and the defendant's daughter over the custody of the couple's child. According to the defendant, he wanted merely to scare Mrs. Cabe, and he did not intend for the shooting to occur. He explained that something built up in him and he did not realize that he had shot Mrs. Cabe until she fell to the floor.

The State charged the defendant with first-degree murder. At trial, the defense attempted to show that there was no premeditation or deliberation. The State presented evidence that, upon learning the results of a custody hearing earlier that day involving Mrs. Cabe's son and the defendant's daughter, the defendant retrieved his .38–caliber pistol, drove seven miles, which took at least twelve minutes, to Richmond Cleaners, stepped inside of the Cleaners, pulled the gun from a manilla envelope, and shot four shots, hitting Mrs. Cabe twice.

The defendant did not testify but presented the testimony of his daughter and two neighbors which indicated that he spent a lot of time with and loved his granddaughter

1. The defendant also challenges the trial court's failure to strike for cause another juror. Because we find error in the trial court's failure to

who was the subject of the custody dispute. After deliberating for thirty-two minutes, the jury found the appellant guilty of first-degree murder without mercy.

## II.

## DISCUSSION

The defendant raises five assignments of error in his appeal to this Court. We find merit in two of the assigned errors and proceed to discuss those errors.

### A. Prospective Juror Billings

First, the defendant claims the trial court erred in denying his challenge for cause of a prospective juror or venireman. During voir dire, Venireman Marvin Billings[1] indicated that he knew Corporal Thomas Bowers of the Beckley Police Department who was to be a State's witness in the trial. Specifically, Mr. Billings indicated the following:

THE COURT: How do you know Thomas Bowers?

PROSPECTIVE JUROR BILLINGS: I went to school with Thomas.

THE COURT: Do you see him or socialize with him any at all now?

PROSPECTIVE JUROR BILLINGS: Just occasionally I see him; seen him at the dealership a couple of weeks ago; we had an investigation over there, talked to him then.

THE COURT: Have you talked to him about this case at all?

PROSPECTIVE JUROR BILLINGS: No; no.

THE COURT: If he were to testify in this case, would your knowledge of him in any way prevent you from acting impartially in this matter?

PROSPECTIVE JUROR BILLINGS: Uh-huh; yeah, I believe it would.

THE COURT: You believe—

PROSPECTIVE JUROR BILLINGS: Yeah, I know Tom pretty good.

strike prospective juror Billings, we do not address the issue of the other juror.

THE COURT: If he were to testify, would you have a tendency to give greater or lesser weight to something he might say? PROSPECTIVE JUROR BILLINGS: Probably a little greater weight, because I've known him for a long time.

\* \* \* \* \* \*

[DEFENSE COUNSEL]: You did say you'd probably have to give their evidence ... greater weight.

PROSPECTIVE JUROR BILLINGS: Thomas' word.

[DEFENSE COUNSEL]: Thomas' word?

PROSPECTIVE JUROR BILLINGS: Right.

[DEFENSE COUNSEL]: How about if that—if we didn't challenge his word, that shouldn't cause a problem, should it?

PROSPECTIVE JUROR BILLINGS: Correct.

[DEFENSE COUNSEL]: What I'm concerned about is not really so much with Mr. Bowers' word, but just with the favoritism with which you might come to listen to the State's evidence as opposed to ours. We try as best we can to keep things a little equal. Now, do you think that you'd—

PROSPECTIVE JUROR BILLINGS: I understand.

[DEFENSE COUNSEL]:—favor—have a tendency to favor the State's case?

PROSPECTIVE JUROR BILLINGS: Huh-uh; I wouldn't favor anybody. Like I said, you know, based on me knowing Thomas for 20 years, I would tend to listen to his word, but, I mean, you know, I wouldn't favor the State over the prosecution or whatever the case may be over.

\* \* \* \* \* \*

[THE COURT]: Any motions?

\* \* \* \* \* \*

[DEFENSE COUNSEL]: I'll just make a motion on the record about his knowledge of the law enforcement officers.

THE COURT: Well, is that an issue?

[DEFENSE COUNSEL]: Frankly, probably not, Judge. I mean, what—Bowers was the arresting officer, I mean, and we don't really challenge his word and that's—I'm being real frank with the Court.

THE COURT: And I guess the question is—I mean, because if there's an issue as to Bowers' word, then perhaps we need to investigate a little bit further. But if that's all Bowers is going to testify to and there's no challenge, he stated clearly that it was—Bowers was the one that he would give a little bit more weight to, but he would not favor the State over the defendant.

\* \* \* \* \* \*

[DEFENSE COUNSEL]:—principally our concern, but I'd like to preserve it.

THE COURT: Preserved and I'll deny it.

[DEFENSE COUNSEL]: Okay, thank you.

According to the defendant, Venireman Billings' friendship with Corporal Bowers and his indication that this friendship would cause him to give greater weight to Corporal Bowers' testimony automatically disqualified Venireman Billings from serving as a juror.

■ The State replies that defense counsel effectively withdrew his initial challenge to Venireman Billings by declining the circuit court's offer to investigate further whether Officer Bowers' testimony was going to be at issue. Also, the State argues that the defendant makes no showing that Venireman Billings was prejudiced because Corporal Bowers had minimal involvement in the case and his testimony was not inconsistent with the defendant's version of what occurred on the day of the killing. Finally, the State emphasizes that Venireman Billings indicated that he would not favor one party over the other.

■ We note at the outset that although Venireman Billings was not struck by the trial court for cause, the defendant exercised a peremptory challenge against him so that he was not on the jury that convicted the defendant. Nevertheless, W.Va.Code § 62–3–3 (1949) requires a panel of twenty jurors "free from exception." This Court has previously found "if proper objection is raised at the time of impaneling the jury, it is reversible error for the court to fail to discharge a juror who is obviously objectionable." *State v. West*, 157 W.Va. 209, 219, 200 S.E.2d 859, 866 (1973). Thus, we have held:

The language of W.Va.Code, 62–3–3 (1949), grants a defendant the specific right to reserve his or her peremptory challenges until an unbiased jury panel is assembled. Consequently, if a defendant validly challenges a prospective juror for cause and the trial court fails to remove the juror, reversible error results even if a defendant subsequently uses his peremptory challenge to correct the trial court's error.

Syllabus Point 8, *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995).

■■■■ The issue before us is whether the trial court should have removed Venireman Billings for cause.

[T]he true test of whether a juror should be struck for cause is whether that juror can render a verdict based solely on the evidence. The trial court is afforded considerable discretion in this determination, and we will reverse the trial court's decision only if there has been an abuse of discretion.

*State v. Sampson*, 200 W.Va. 53, 57, 488 S.E.2d 53, 57 (1997), *citing State v. Phillips*, 194 W.Va. at 588, 461 S.E.2d at 94. Further, "[w]hen a defendant seeks the disqualification of a juror, the defendant bears the burden of 'rebut[ting] the presumption of a prospective juror's impartiality[.]' " *State v. Phillips*, 194 W.Va. at 588, 461 S.E.2d at 94, *quoting Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751, 756 (1961). In determining whether there has been an abuse of discretion, we must evaluate each case on its own facts. *Sampson*, 200 W.Va. at 57, 488 S.E.2d at 57, *citing State v. West*, 157 W.Va. at 219, 200 S.E.2d at 865.

■■■■ First, we disagree with the defendant's argument that the mere fact that Venireman Billings attended school with Corporal Bowers, has known him for twenty years, and occasionally socializes with him required his disqualification for cause. In Syllabus Point 6 of *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 (1983), this Court held:

A prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

We traditionally have not applied this rule to mandate the automatic disqualification of a prospective juror merely because of a consanguineal, marital, or social relationship with an employee of a law enforcement agency who is actively involved in the prosecution of the case.

In *State v. King*, 183 W.Va. 440, 396 S.E.2d 402 (1990), the defendant, who was convicted of incest, claimed that a prospective juror should have been removed for cause due to his friendship with a State trooper who was a key witness for the State. This Court quoted Syllabus Point 6 of *State v. Beckett*, but noted that individual voir dire was conducted on the prospective juror and that the circuit court did not abuse its discretion in failing to remove the prospective juror for cause. In *State v. Wade*, 174 W.Va. 381, 327 S.E.2d 142 (1985), the defendant alleged error in the circuit court's refusal to dismiss prospective jurors, one of whom knew the prosecuting attorney and a State witness. This Court again quoted the rule from *State v. Beckett* but found no error. The Court explained, "A more prudent course may have been to strike the prospective jurors, however, under the circumstances of this case, the trial court did not err when it denied the appellant's challenges for cause." *Wade*, 174 W.Va. at 386, 327 S.E.2d at 148. Finally, in *State v. White*, 171 W.Va. 658, 301 S.E.2d 615 (1983), decided prior to *Beckett*, the defendant asserted that two prospective jurors should have been excused for cause because they knew law enforcement officers actively involved in the defendant's prosecution. This Court could not conclude from the record that the prospective jurors were unable to render a verdict solely on the evidence adduced during the trial. Accordingly, the Court found no error. Likewise, we do not believe that Venireman Billings' friendship with Corporal Bowers alone automatically disqualified him from serving on the jury panel.

We do find a problem, however, with Venireman Billings' responses during individual voir dire. As set forth above, Venireman Billings first stated that his knowledge of Corporal Bowers would prevent him from acting impartially. He then explained that he would give "a little greater weight" to Corporal Bowers' testimony because he had known Corporal Bowers a long time. Finally, although he said that he would not favor the State over the defendant, he never disavowed the fact that he would tend to give Corporal Bowers' testimony greater weight.

Somewhat similar to the instant case is *State v. Archer*, 169 W.Va. 564, 289 S.E.2d 178 (1982) (per curiam), in which a prospective juror whose son was a deputy sheriff admitted that he thought he would give more weight to a policeman's testimony because his son was a law enforcement officer. He also stated, however, that he would not "lean to someone just because I know them, if they are wrong." *Archer*, 169 W.Va. at 566, 289 S.E.2d at 179. This Court held that the prospective juror "was at least subject to potential prejudice," *Archer*, 169 W.Va. at 568, 289 S.E.2d at 180, and that the defendant's motion to strike for cause should have been granted. Accordingly, the Court reversed and remanded for a new trial.

The facts of the instant case actually indicate a higher likelihood of potential prejudice than those in *Archer*. Whereas in *Archer* the prospective juror's son was not involved in the defendant's case, in the instant case Corporal Bowers was the arresting officer and he testified at the defendant's trial. "The object of the law is, in all cases in which juries are impaneled to try the issue, to secure [persons] for that responsible duty whose minds are wholly free from bias or prejudice either for or against the accused[.]" Syllabus Point 1, in part, *State v. Hatfield*, 48 W.Va. 561, 37 S.E. 626 (1900). Thus, we conclude in the instant case that Venireman Billings indicated potential prejudice and was, therefore, not free from exception. Because the defendant was statutorily entitled to a panel of twenty jurors who were free from exception, we find that the circuit court abused its discretion in failing to strike Venireman Billings from the jury panel for cause.

We have carefully considered the arguments of the State on this issue. As set forth above, the State first says that defense counsel effectively withdrew his initial challenge to Venireman Billings by declining the circuit court's offer to investigate further. We disagree. While defense counsel could have argued his objection more clearly and aggressively, we believe it was adequately preserved. Also, it is true that defense counsel could have investigated further, but our reading of the record indicates that any additional investigation would likely have been of little utility.

In addition, we must differ with the State's characterization of Corporal Bowers' involvement in the case as "minimal." Corporal Bowers testified concerning the arrest of the defendant and the retrieval of the firearm with which the defendant shot Mrs. Cabe. He testified further of the defendant's behavior and demeanor during and immediately after his arrest. Although this testimony was undisputed, it was a significant part of the State's evidence.

Finally, we believe that Venireman Billings' statement that he would not favor one party over the other conflicts with his statement that he would give greater weight to Corporal Bowers' testimony. This conflict was never resolved. "Any doubt the court might have regarding the impartiality of a juror must be resolved in favor of the party seeking to strike the potential juror." *Davis v. Wang*, 184 W.Va. 222, 226, 400 S.E.2d 230, 234 (1990), *overruled on other grounds by Pleasants v. Alliance Corp.*, 209 W.Va. 39, 543 S.E.2d 320 (2000), *citing State v. West*, 157 W.Va. 209, 200 S.E.2d 859, 866 (1973). Moreover, we recently held that "[o]nce a prospective juror has made a clear statement during *voir dire* reflecting or indicating the presence of a disqualifying prejudice or bias, the prospective juror is disqualified as a matter of law and cannot be rehabilitated by subsequent questioning, later retractions, or promises to be fair." Syllabus Point 5, *O'Dell v. Miller*, 211 W.Va. 285, 565 S.E.2d 407 (2002). Venireman Billings' answers during voir dire raise substantial doubts that he would have been able to assess the evidence in an impartial manner.

We have previously said that "if a defendant validly challenges a prospective juror

for cause and the trial court fails to remove the juror, reversible error results even if a defendant subsequently uses his peremptory challenge to correct the trial court's error." *State v. Phillips*, 194 W.Va. at 588, 461 S.E.2d at 94. We find that the defendant validly challenged Venireman Billings for cause, and the trial court's failure to remove Venireman Billings constitutes reversible error.

### B. *Right Against Self-Incrimination*

Second, the defendant contends that the prosecutor's presentation of testimony regarding the appellant's failure to express remorse during court proceedings violated the appellant's right against self-incrimination in violation of the Fifth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution.

The State responds that the defendant's own counsel first elicited testimony concerning the appellant's lack of remorse.[2] Also, says the State, the testimony adduced by the prosecutor indicated the defendant's failure to show remorse in the immediate aftermath of the killing, such as his failure to call for an emergency vehicle, and not his failure to show remorse during the trial. In addition, the State avers that the defendant did not exercise his right against self-incrimination but instead expressed himself freely in several court proceedings during which he launched into profanity-laced tirades against his lawyer and the trial judge. Concerning the prosecutor's closing argument, the State asserts that the prosecutor said nothing that could be construed as referring to the appellant's failure to testify and never used the word "remorse." Further, the State notes that defense counsel made no objection to the prosecutor's closing argument. Finally, the State emphasizes the fact that, because it was undisputed that the defendant shot Mrs.

Cabe, the only issue at trial was whether there was premeditation.

The defendant points to several specific portions of the transcript in which, he alleges, the prosecutor improperly commented on his right not to testify at trial. The first instance was during the prosecutor's direct examination of Mrs. Cabe's daughter, Amy.

[PROSECUTOR]: Ms. Cabe, I believe the question was, since your mother's killing on September 8th of 1999, has this defendant, Marvin Mills, ever attempted to or actually contacted you or any member of the family about that killing?

[AMY CABE]: No.

During the prosecutor's direct examination of the arresting officer, Corporal Tom Bowers of the Beckley Police Department, the prosecutor asked Corporal Bowers whether, on the evening of the killing, the defendant inquired as to the well-being of Mrs. Cabe. Corporal Bowers responded, "No, I never heard him ask anything about her." The prosecutor similarly questioned Beckley Police Officer Gary Lemon.

[PROSECUTOR]: When you saw the defendant, throughout your opportunity to observe the defendant on that evening, how would you describe his demeanor?

[OFFICER LEMON]: Calm.

[PROSECUTOR]: Did you ever see him cry?

[OFFICER LEMON]: No, ma'am.

[PROSECUTOR]: Did you ever hear him make any inquiry about the well-being of Pamela Cabe?

[OFFICER LEMON]: No, ma'am.

The next time the remorse issue came up was during the prosecutor's direct examination of Detective Jeffrey Shumate, the lead investigator in Mrs. Cabe's killing.

[DEFENSE COUNSEL]: He didn't appear upset?
[DETECTIVE ROBERTSON]: That's correct.
[DEFENSE COUNSEL]: Didn't show any sign of remorse, did he?
[DETECTIVE ROBERTSON]: No, sir, he did not.
[DEFENSE COUNSEL]: He didn't appear to have any empathy, did he?
[DETECTIVE ROBERTSON]: No, sir.

---

2. This occurred during defense counsel's cross-examination of Chief Detective Cedric Robertson of the Beckley Police Department who was present during the defendant's arrest.

> [DEFENSE COUNSEL]: ... Now, when you leaned down on your knees to talk to Marvin Steve Mills on the night of September 8th, you testified that he didn't cry.
>
> * * * * * *
>
> [DETECTIVE ROBERTSON]: That's correct.

[PROSECUTOR]: Throughout your time with the defendant, on the hours of September 8th and then into September 9th of 1999, did he ever make inquiry of you as to the condition of Mrs. Cabe?

[DETECTIVE SHUMATE]: He never asked about Mrs. Cabe or her well being.

[PROSECUTOR]: Did he ever give you any expression, anything that could indicate any sorrow or remorse?

[DEFENSE COUNSEL]: Objection, Your Honor; if we might approach?

\* \* \* \* \* \*

(COUNSEL AT BENCH)

[DEFENSE COUNSEL]: Your Honor, I'm, of course, aware that a prior statement made by the accused under proper circumstances is admissible. I'm not quite so sure that the failure of a statement by a defendant would be admissible.

[PROSECUTOR]: I believe it's the demeanor of the defendant at the time of the crime.

[DEFENSE COUNSEL]: We've gotten into demeanor, I think.

[THE COURT]: Overruled.

\* \* \* \* \* \*

[PROSECUTOR]: Did the defendant, throughout that period of time, ever give you any indication—verbal, nonverbal—any indication of any sorrow or remorse over the killing of Mrs. Cabe?

[DETECTIVE SHUMATE]: No, ma'am, he did not.

[PROSECUTOR]: Since that September 8th, September 9th, 1999 contact with the defendant, have you had repeated subsequent contacts with the defendant in court proceedings?

[DETECTIVE SHUMATE]: Yes, ma'am.

[PROSECUTOR]: And just answer yes or no to this question. Has the defendant, in your presence, made expressions in these several proceedings, the times you've been with him, following September 8th, September 9th, 1999; just say yes or no?

[DETECTIVE SHUMATE]: Yes.

[DEFENSE COUNSEL]: Your Honor, we would object, again, to that.

[THE COURT]: Overruled.

[DETECTIVE SHUMATE]: Yes, ma'am.

[PROSECUTOR]: And answer this next question yes or no. When he has expressed himself in these occasions when you've been with the defendant following September 8th and September 9th of 1999, has he, in any expression, indicated remorse or sorrow over the killing of Pam Cabe?

[DETECTIVE SHUMATE]: No, ma'am.

[PROSECUTOR]: Can you say in what word—what expressions the defendant has made since that time, in your presence or in proceedings, regarding the alleged murder of Mrs. Cabe?

[DEFENSE COUNSEL]: Your Honor, if the Court will note a continuing objection to this line of questioning.

[THE COURT]: You've already objected and I've ruled.

[DETECTIVE SHUMATE]: Yes, ma'am.

[PROSECUTOR]: And what would be the one word?

[DETECTIVE SHUMATE]: Anger.

Finally, during closing argument, the prosecutor stated:

And there are cases in which—in other cases in which, as the detectives all said, and the police, no murderer is normal, because murder isn't normal. But there are cases in which the murderer himself calls 911. There are cases in which the murderer himself says, "I am so sorry; I am so sorry. I beg your forgiveness."

Maybe those murderers—maybe those first degree murderers should get a second chance. But upon the proof in this case, upon the unspeakable cruelty of this murder and upon the state of mind of this defendant, we ask for your verdict of guilty to first degree murder and no parole; no second chances for Marvin Mills.

"That a defendant's right not to testify in a criminal case is protected by the constitutional mandate against self-incrimination has long and repeatedly been affirmed by this Court." *Pinkerton v. Farr*, 159 W.Va. 223, 227, 220 S.E.2d 682, 686 (1975) (citations omitted). *See also State v. Nuckolls*, 166 W.Va. 259, 261, 273 S.E.2d 87, 89 (1980) (footnote omitted) ("We have always scrupulously protected the defendant's right not to

take the stand under the Fifth Amendment to the *Constitution of the United States* and Article III, Section 5 of the *Constitution of West Virginia"*). In order to protect this right, it is the statutory policy of this State to prohibit the prosecutor from making any comment on the defendant's failure to testify at trial. W.Va.Code § 57–3–6 (1923) provides that a criminal defendant's decision to invoke his right not to testify as guaranteed by the Fifth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution "shall create no presumption against him, nor be the subject of any comment before the court or jury by anyone." In *State v. Taylor,* 57 W.Va. 228, 235, 50 S.E. 247, 249 (1905), the Court explained the common law origin of this rule. "So the law, having brought the prisoner into court against his will, did not permit his silence to be treated or used as evidence against him." We have further expounded:

> The basis for the rule prohibiting the use of the defendant's silence against him is that it runs counter to the presumption of innocence that follows the defendant throughout the trial. It is this presumption of innocence which blocks any attempt of the State to infer from the silence of the defendant that such silence is motivated by guilt rather than the innocence which the law presumes.

*State v. Boyd,* 160 W.Va. 234, 240, 233 S.E.2d 710, 716 (1977).

 In order to carefully ensure that a defendant's exercise of his right not to testify is not used against him, we have held that "[r]emarks made by the State's attorney in closing argument which make specific reference to the defendant's failure to testify, constitute reversible error and defendant is entitled to a new trial." Syllabus Point 5, *State v. Green,* 163 W.Va. 681, 260 S.E.2d 257 (1979). We have also stated that "[i]t is prejudicial error in a criminal case for the prosecutor to make statements in final argument amounting to a comment on the failure of the defendant to testify." Syllabus Point 3, *State v. Noe,* 160 W.Va. 10, 230 S.E.2d 826 (1976), *overruled on other grounds by State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995). Finally,

The general rule formulated for ascertaining whether a prosecutor's comment is an impermissible reference, direct or oblique, to the silence of the accused is whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify.

*State v. Swafford,* 206 W.Va. 390, 393–394, 524 S.E.2d 906, 909–910 (1999), *quoting State v. Clark,* 170 W.Va. 224, 227, 292 S.E.2d 643, 646–47 (1982) (citations omitted).

A review of our case law reveals that this Court has been fairly stringent in finding prejudicial error when the prosecution has commented, either directly or indirectly, on the failure of the defendant to testify. *See State v. Swafford,* 206 W.Va. 390, 393, 524 S.E.2d 906, 909 (1999) (finding prosecutor's question where would State have been in this case if other witnesses said, "We ain't telling you nothing ... We got our constitutional rights" to be reversible error); *State v. Billups,* 179 W.Va. 353, 354, 368 S.E.2d 723, 724 (1988) (finding prosecutor's questions, "you haven't heard [defendant] deny that he was there, have you? And you haven't heard him deny that the money was on him, have you?" to constitute reversible error); *State v. Bennett,* 172 W.Va. 131, 134, 304 S.E.2d 35, 38 (1983) (finding prejudicial prosecutor's repeated statements that State's evidence was uncontradicted or had not been denied, certain evidence had not been introduced, and only witnesses who testified said defendant was guilty); *State v. Starcher,* 168 W.Va. 144, 145, 282 S.E.2d 877, 878 (1981) (finding prejudicial prosecutor's comment that defendant is the only man that knows what was in his mind at the time of drug transfer); *State v. Nuckolls,* 166 W.Va. 259, 262, 273 S.E.2d 87, 89 (1980) (finding prosecutor's remarks, "I haven't seen [defendant], you haven't seen her, nobody in the Court Room has seen her.... I want to know what was in [defendant's] mind when she killed her husband" to be reversible error); *State v. Green,* 163 W.Va. 681, 695, 260 S.E.2d 257, 265 (1979) (reversing because of prosecutor's statements, "None of those facts are in dispute. No one said those things didn't take place ... there is no one in this Court Room that ever said he didn't do it"); *State v. Noe,*

*supra* (reversing due to prosecutor's remarks that defendant could not have his cake and eat it too and he either had alibi or he didn't); *State v. Self*, 130 W.Va. 515, 518, 44 S.E.2d 582, 584 (1947) (finding prejudicial prosecutor's comment to effect that defendant did not testify on his own behalf); *State v. Jones*, 108 W.Va. 264, 266, 150 S.E. 728 (1929) (finding prosecutor's argument that defendant did not deny State's evidence himself to be reversible error); and *State v. Costa*, 101 W.Va. 466, 467, 132 S.E. 869, 870 (1926) (finding prosecutor's argument, "[defendant] *does not explain by his own testimony*, or by any other means, these facts and circumstances" to be reversible error). Further, we have warned prosecutors to "studiously avoid even the slightest hint as to the defendant's failure to testify." *State v. Lindsey*, 160 W.Va. 284, 293, 233 S.E.2d 734, 740 (1977) (citations omitted).

Several courts have recognized that it is improper for a prosecutor to comment on a defendant's lack of remorse at trial where the defendant has chosen not to testify. For example, in *Hall v. State*, 13 S.W.3d 115 (Tex.App.2000), *review dismissed as improvidently granted by* 46 S.W.3d 264 (Tex.Crim. App.2001), the Court of Appeals of Texas found error where the prosecutor asked the jury, at the punishment stage, "[h]as [the defendant] ever shown remorse for this?" The court reasoned:

> This statement clearly asks the jury to consider whether Appellant demonstrated remorse *at any time*, which necessarily refers to Appellant's in-court demeanor as well.
>
> We ... hold that the prosecutor's ... comment that Appellant has never shown remorse for his actions was clearly a direct comment on Appellant's failure to testify. The necessary and natural effect of the prosecutor's comments, viewed from the standpoint of the jury, was to direct the jury's attention to the Appellant's invocation of his right to remain silent.

*Hall*, 13 S.W.3d at 118–19 (footnotes and citation omitted). The court reversed the appellant's sentence and remanded the case for a new punishment hearing, and explained:

> The error in this case encroached Appellant's fundamental constitutional right against self-incrimination. Just before the glaring reference to Appellant's failure to testify, the State made an improper reference to highly inflammatory evidence not in the record. Based upon a review of the entire argument and record, and in light of the maximum sentence assessed, we hold that the State's reference to Appellant's failure to testify had a significant or injurious affect on the jury's verdict such that Appellant's substantial rights were affected. As the Court of Criminal Appeals has instructed, when the State violates article 38.08 [prohibiting the prosecuting attorney from alluding to or commenting on the accused's invocation of his or her right not to testify], the duty of the reviewing court is clear, and "the responsibility for the reversal must rest solely upon the prosecuting attorney." *Dickinson [v. State]*, 685 S.W.2d [320], [ ] 322.

*Hall*, 13 S.W.3d at 120. *See also State v. McClure*, 342 S.C. 403, 537 S.E.2d 273 (S.C. 2000) (finding that prosecutor's repeated emphasis on fact that appellant had not shown remorse and had not testified improperly focused jury's attention on whether appellant had to testify and express remorse to avoid the death penalty); *Patrick v. State*, 516 N.E.2d 63 (Ind.1987) (concluding that prosecutor's reference to defendant's lack of remorse was improper but any harm was cured by trial court's admonition to disregard reference); and *Chavez v. State*, 960 S.W.2d 829 (Tex.App.1997) (holding that any error in comment on defendant's nontestimonial demeanor as showing lack of remorse was cured where court instructed jury to disregard the comment).

■■■ As set forth above, the defendant cites to several specific portions of the transcript which, he alleges, show improper comments on his right not to testify. First, the defendant complains that the prosecutor elicited testimony from Mrs. Cabe's daughter, Amy, that, since her mother's killing, the defendant has never contacted her or any member of her family. We believe that this testimony is not of such a character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify. The testimony specifically concerns whether the defendant had contacted the witness or her family, *not* whether the defendant had *stated* or *testified* to something. In

addition, the testimony does not mention remorse or lack thereof. Accordingly, we find no error in this testimony.

 The defendant also complains about the testimony of Corporal Bowers, Officer Lemon, and Detective Shumate that, on the evening of the defendant's arrest, the defendant never inquired about Mrs. Cabe's well-being and never expressed remorse for killing Mrs. Cabe. We believe that this testimony would not naturally and necessarily be taken by the jury to be a reminder that the defendant did not testify because the testimony clearly was limited to the defendant's lack of remorse on the evening of Mrs. Cabe's killing. In addition, while this Court has held:

> Under the Due Process Clause of the West Virginia Constitution, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury.

Syllabus Point 1, *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), the record in the instant case indicates that the defendant did not exercise his right to remain silent after he was arrested and informed of his *Miranda* rights. Instead, the defendant gave a statement to Detective Shumate which was recorded and played for the jury at trial. Accordingly, because the defendant did not exercise his pre-trial right to remain silent, the testimony of Corporal Bowers, Officer Lemon, and Detective Shumate was not improper commentary on the defendant's pre-trial silence.

 Further, even if we were to find the above testimony to be improper, it would not amount to reversible error. The rule in this Court is that "[a] judgment will not be reversed for any error in the record introduced by or invited by the party asking for the reversal." Syllabus Point 21, *State v. Riley,* 151 W.Va. 364, 151 S.E.2d 308 (1966), *overruled on other grounds by Proudfoot v. Dan's Marine Service, Inc.,* 210 W.Va. 498, 558 S.E.2d 298 (2001). The first person at trial to use the word "remorse" was defense counsel who asked Chief Detective Cedric Robertson, on cross-examination, whether the defendant showed "any sign of remorse" when Detective Robertson read him his *Miranda* rights at the scene of the arrest. This questioning occurred prior to the State's examination of Officer Lemon and Detective Shumate. The defendant cannot complain about the testimony concerning his pre-trial lack of remorse when his own counsel first introduced such testimony.

██ The defendant also alleges error in the prosecutor's direct examination of Detective Shumate concerning the defendant's failure to express remorse when he had otherwise expressed himself in court proceedings in which Detective Shumate was present.[3] As set forth above, after the prosecutor es-

---

**3.** The record reveals that the defendant freely expressed himself during his arraignment which was held at the Southern Regional Jail. (The defendant's initial arraignment was aborted due to his unruly behavior.) The transcript reads as follows:

> SECURITY OFFICER: Where do you want him at, Judge?
> THE COURT: Set him over here by his lawyers.
> THE DEFENDANT: Dewitt, how long have you been workin' for the prosecution?
> THE JUDGE: The Court calls the case of *State of West Virginia v. Marvin Mills,* the Case Number is 99–F–13–K. The record should show that the State appears by Kristen Keller . . .
> THE DEFENDANT: Tell him don't want no Kristen Keller.
> THE COURT: . . . who is the Chief Assistant Prosecuting Attorney of Raleigh County.

> THE DEFENDANT: No, I don't want to hear your f---in' s--- man. F--- you man. Kiss my a--.
> THE COURT: The record should further show that the defendant does appear in person and he is represented by counsel, Dewitt Daniell and Gail Michelson.
> THE DEFENDANT: Kiss my a--. No, I don't have counsel. That's a f---in' lie.
> THE COURT: All right. Mr. Mills, I should tell you that the Grand Jury . . .
> THE DEFENDANT: Kiss my a--. You don't have to tell me nothin'. Quit choking me, please.
> THE COURT: . . . of the Circuit Court of Raleigh County has returned an indictment against you at the September term charging you with two counts, one being First Degree Murder, the other being . . .
> THE DEFENDANT: You know that's an illegal hold. Go to hell. I said go to hell.
> THE COURT: . . . the use of a firearm.

tablished that Detective Shumate was present in court proceedings in which the defendant expressed himself, the prosecutor then asked "[w]hen he has expressed himself in these occasions . . . has he, in any expression, indicated remorse or sorrow over the killing of Pam Cabe?" to which Detective Shumate responded "[n]o ma'am." The prosecutor then asked Detective Shumate to describe in one word the defendant's expressions, to which Detective Shumate replied "Anger."

THE DEFENDANT: Get your f---in' hands off me. What the f--- is your problem? I'm gonna jab my knee right in your f---in' nuts if you don't get off me.
THE COURT: Your attorney has indicated to the Court that he has reviewed with you a copy of this indictment. I'm going to enter a not guilty plea for the purpose of this arraignment. Mr. Daniel [sic] is there anything further that you wish to bring before the Court?
MR. DANIEL [sic]: Your Honor, first of all, you know, I've got some real concerns—I know that the law enforcement officers have to exert some force. Apparently Mr. Mills is upset. He may very well be upset with me. I don't feel like I'm in any danger. Perhaps, if we could, you know, see whether or not he can sit still and, you know, still and quiet long enough to conduct at least something in accordance with due process.
THE COURT: All right, Mr. Mills, do you agree to cooperate?
THE DEFENDANT: You've got two minutes to explain to me what the f---in's goin' on. Yes, I can cooperate. Yes, I can use proper English.
THE COURT: All right.
THE DEFENDANT: What the hell is goin' on here?
THE COURT: All right, this is an arraignment, Mr. Mills, and I'm sure you know that . . .
THE DEFENDANT: Is this the normal procedure . . .
THE COURT: . . . you've been charged . . .
THE DEFENDANT: . . . for you all to come the hell out here?
THE COURT: Well, it's not, because I don't want to arraign someone in their underwear, to be honest with you.
THE DEFENDANT: Well then—why—then go get the d—n handbook. Sir, I asked permission to wear my own d--n clothes. The institution has the right and they state in the book that, yes, the individual can wear civilian clothes and, yes, they're denying me the right. Bull s---. It does not.
THE COURT: If you recall, Mr. Mills, the last time we were in court you were disruptive and non-cooperative and that's why were [sic] having this proceeding out here.
THE DEFENDANT: Look, I'm gonna get f---ed anyway, so what difference does it make?
THE COURT: Well, it may not make much difference at all.

We find the prosecutor's questioning of Detective Shumate improper. In its brief to this Court, the State emphasizes that the defendant chose not to remain silent during the proceedings at issue but rather repeatedly expressed himself in a loud and obscene manner. However, the fact remains that the defendant elected not to testify at trial. The defendant's outbursts during his arraignment and the in-camera hearing did not constitute sworn testimony heard by the jury. There-

THE DEFENDANT: You're probably right. You're One Hundred Percent right.
THE COURT: Do you wish to inquire about the procedure at all?
THE DEFENDANT: Do what you must do.
THE COURT: All right, I enter a not guilty plea, as I say, on behalf of this defendant . . .
THE DEFENDANT: If you're through now, I'd like to go, man.
THE COURT: . . . and, the hearing is concluded.
THE DEFENDANT: Thank you.
Further, during the prosecutor's cross-examination of Dr. Ryan Finkinbine whose testimony was proffered by defense counsel at an in camera hearing, the defendant expressed himself as follows:
[Kristen KELLER]: And the defense lawyer asked you if a layperson would say he has an antisocial personality disorder, but a person who knew everything you knew about this defendant, culminating in his commission of murder, would you agree that laypeople, knowing this, if the [sic] did not use the word antisocial personality disorder, might say well, he's a mean S.O.B.?
[DR. FINKINBINE]: Again, I can't say what somebody might—
THE DEFENDANT: I think you're an a—hole too, ma'am, calling me a son of a bitch.
MS. KELLER: Are you aware that—
THE COURT: Mr. Mills.
THE DEFENDANT: Well, she had no right—
THE COURT: Mr. Mills.
THE DEFENDANT:—to call me an S.O.B.
THE COURT: Mr. Mills.
THE DEFENDANT: What?
THE COURT: This is the last warning. Another outburst like that, and I will remove you. Do you understand me?
THE DEFENDANT: That's your choice, Your Honor.
THE COURT: No, it's your choice. Mr. Mills, because your conduct is required to be in conformity with—
THE DEFENDANT: I don't appreciate her calling me an S.O.B.
THE COURT: Remove him, Sheriff.
THE DEFENDANT: No problem. Have a good day. I didn't expect a fair trial no way. F---ing a--holes, especially you.

fore, what the defendant failed to express in those outbursts should not have been admitted as evidence against him.

A particularly troublesome aspect of the testimony elicited from Detective Shumate is that it was unfairly ambiguous. The testimony informed the jury only that the defendant made expressions of anger in court proceedings in which Detective Shumate was present, and the defendant failed to indicate remorse or sorrow. The jury was not informed that these expressions of anger were in the nature of uncontrolled, heated, and sometimes incoherent rantings. Consequently, the jury could have been left with the mistaken impression that the defendant had made a formal statement of some sort concerning Mrs. Cabe's killing in which he had expressed anger at Mrs. Cabe but no remorse. Moreover, such an impression would naturally have caused jurors to wonder why the defendant gave a statement in prior court proceedings but not at trial. This, of course, would have had the effect of highlighting the defendant's failure to testify at trial. Accordingly, we conclude that Detective Shumate's testimony concerning the defendant's failure to express remorse at prior court proceedings was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify.

 We also believe that the prosecutor's closing argument constituted an improper reference to the defendant's election not to testify. We agree with the State that the prosecutor's initial comment that "there are cases in which the murderer himself calls 911" does not constitute error. A defendant's lack of concern for the victim at the crime scene may be used as evidence of the defendant's intent to kill. *See State v. LaRock,* 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996) (noting that witness testified that neither parent showed any remorse or regret after being told of the death of their son and she found their response to be very inappropriate). The evidence at trial indicated that after shooting Mrs. Cabe, the defendant strolled across the street, smoked a cigarette, sat on a wall, and watched emergency vehicles arrive. This evidence indicates the defendant's lack of remorse at the crime scene.

 However, the prosecutor went on to state "[t]here are cases in which the murderer himself says, 'I am so sorry; I am sorry. I beg your forgiveness.'" During oral argument, the State argued that this comment must be read in context with the one before it so that it amounts simply to a reiteration of the defendant's lack of remorse at the crime scene. Unfortunately, the statement itself is not specifically limited to lack of remorse at the crime scene, and such a construction is not readily apparent. It is likely that one would naturally understand the comment to mean that the defendant has not asked for forgiveness for killing Mrs. Cabe *at any time,* including at trial. Of course, the only way in which the defendant could beg forgiveness at trial would be to take the stand and testify in his own behalf. Accordingly, we believe that the prosecutor's second statement amounts to a comment on the defendant's failure to testify.

 Concerning the State's contention that the defendant failed to adequately preserve the alleged error which occurred during closing argument because he made no objection at that time, this Court has held:

> To preserve error with respect to closing arguments by an opponent, a party need not contemporaneously object where the party previously objected to the trial court's *in limine* ruling permitting such argument, and the argument pursued by the opponent reasonably falls within the scope afforded by the court's ruling.

Syllabus Point 3, *Lacy v. CSX Transp. Inc.,* 205 W.Va. 630, 520 S.E.2d 418 (1999). In the instant case, the defendant did not make a previous motion *in limine* but he did previously object to evidence of the defendant's lack of remorse. This is similar to our recent case of *State v. Walker,* 207 W.Va. 415, 533 S.E.2d 48 (2000) (per curiam), where the defendant complained of improper comments during the State's closing argument. The defendant conceded that he made no objection to the comments during closing argument but he did object when the evidence, which formed the substance of the challenged comments, was originally adduced during State's cross-examination of the defendant.

We found that the alleged error was properly preserved and explained:

> Consistent with *Lacy*, to preserve error with respect to objections to closing argument by the State, a defendant need not contemporaneously object when the defendant has previously made an objection concerning the substance of the argument and obtained a ruling on the objection by the trial court. Therefore, we conclude that the question of whether the State's closing argument improperly addressed [the defendant's] post-*Miranda* silence was preserved for appeal.

*Walker*, 207 W.Va. at 419, 533 S.E.2d at 52 (footnote omitted).

■■■ The same reasoning applies in the instant case. Although the defendant did not object to the prosecutor's closing argument, defense counsel objected twice to the prosecutor's direct examination of Detective Shumate in which the lack of remorse evidence was elicited, and he received a ruling by the trial court. Accordingly, we conclude that the defendant properly preserved for appeal

his challenge to the prosecutor's comments during closing argument.

■■■ As noted above, our law says that "[i]t is prejudicial error in a criminal case for the prosecutor to make statements in final argument amounting to a comment on the failure of the defendant to testify." Syllabus Point 3, *State v. Noe, supra*. Therefore, we find that Detective Shumate's testimony on the defendant's demeanor at prior court proceedings and the prosecutor's comment in closing argument that "[t]here are cases in which the murderer himself says, 'I am so sorry,'" constitute prejudicial error.[4]

## III.

## CONCLUSION

For the reasons stated above, we reverse the defendant's conviction and we remand for a new trial.

Reversed and remanded.

---

4. The defendant raised other assignments of error. According to the defendant, his due process rights were violated when the State was permitted to introduce evidence of the defendant's domestic violence against his wife. The record shows, however, that it was defense counsel who moved for the admission of the document which contained the domestic violence evidence. As noted above, "[a] judgment will not be reversed for any error in the record introduced by or invited by the party asking for the reversal." Syllabus Point 21, *State v. Riley, supra*. The defendant cannot introduce evidence and then complain about it.

Also, the defendant claims that the evidence and commentary on lack of remorse constituted impermissible W.Va.R.Evid. 404(b) character evidence. However, the defendant failed to make a Rule 404(b) objection at trial. *See* Syllabus Point 6, *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945) (holding that "[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court").

Finally, the defendant claims that the trial court erred in admitting as evidence his wife's December 29, 1999 statement to police. Our recent case of *State v. Bohon*, 211 W.Va. 277, 565 S.E.2d 399 (2002) spoke to the issue of the confidential communications privilege found in W.Va. Code § 57-3-4. We stated in *Bohon* that "when the substance of a privileged communication is

communicated to a third party, the third party may testify as to the communication, so long as the third party's testimony is otherwise admissible." *Bohon*, 211 W.Va. at 282–83, 565 S.E.2d at 404–05. In the instant case, the communication between the defendant and his wife was communicated by the defendant's wife to a detective, and this communication was published to the jury through the testimony of that detective. Therefore, the marital communication privilege was not violated. The question instead is whether the statement was otherwise admissible. On appeal, the defendant claims that portions of the statement were improperly admitted under Rule of Evidence 804(b)(5), the residual hearsay exception, because the circuit court failed to make the requisite findings, prior to admission, under *State v. Bailey*, 179 W.Va. 1, 365 S.E.2d 46 (1987) and *State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990), *modified by State v. Kennedy*, 205 W.Va. 224, 517 S.E.2d 457 (1999). The defendant also complains that the probative value of some of the statements did not outweigh their prejudicial effect. We caution the trial court on remand that prior to admitting hearsay statements under Rule of Evidence 804(b)(5), the trial court must make the necessary findings enumerated in *Bailey* and the statement must meet the confrontation clause requirements set forth in *James Edward S.* as modified by *State v. Kennedy*. Finally, the statements must meet the requirement of Rule of Evidence 403. If the statements meet all of these requirements after careful inquiry, they are admissible.

Justice McGRAW, deeming himself disqualified, did not participate in the decision in this case.

Judge ALSOP, sitting by special assignment.

Justice ALBRIGHT concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.